UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CECILIA BIRDEX,

                Plaintiff,

- against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**ORDER ADOPTING**
**REPORT AND RECOMMENDATION**

19 Civ. 7228 (PGG) (SN)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Cecilia Birdex brings this action pursuant to § 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final determination of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits. (Cmplt. (Dkt. No. 1)) The Commissioner has moved for judgment on the pleadings. Magistrate Judge Sarah Netburn has issued a 20-page Report and Recommendation ("R&R") recommending that the Commissioner's motion be granted. (R&R (Dkt. No. 17)) For the reasons stated below, this Court will adopt the R&R in its entirety, and the Commissioner's motion will be granted.

## BACKGROUND

**I.    FACTS**[1]

        Plaintiff submitted an application for disability benefits in August 2015, in which she states that she became disabled as of January 1, 2005, as a result of neuropathy, fatigue, glaucoma, and low testosterone. (Administrative Record ("AR") (Dkt. No. 10) at 115-19, 137) According to Plaintiff's disability report, these conditions caused her to make changes to her

---

[1] The factual record is discussed in more detail in the R&R. (Dkt. No. 17)

work activity in November 2001 and to stop working in August 2002. (Id. at 137) Plaintiff had worked as a computer technician at a law firm from October 1985 to October 1988, and as a field tech/supervisor for the City of New York from May 1989 to May 2003.[2] (Id. at 138)

Plaintiff began treatment for (1) "neuropathy – back problems & [Chronic Fatigue Syndrome/Fibromyalgia Syndrome]" in 2003; (2) low testosterone and general fatigue in 2004; and (3) glaucoma in 2005. (Id. at 141-45) Although Plaintiff cites several alleged physical disabilities in her benefits application, most of the medical records Plaintiff submitted in support of her claim relate to a visual impairment. Between December 2006 and February 2018, Plaintiff had regular appointments with two ophthalmologists: Dr. Golnaz Moazami and Dr. Lama Al-Aswad. (Id. at 321-42, 347-83, 421-27)

Records from Dr. Moazami indicate that, as of November 2007, Plaintiff was suffering from advanced glaucoma. (Id. at 352-54) In December 2008, Dr. Al-Aswad performed outpatient surgery to address Plaintiff's open-angle glaucoma. (Id. at 268-320) After her surgery, Plaintiff continued to have regular appointments with Drs. Moazami and Al-Aswad through 2018. Dr. Moazami's records indicate that Plaintiff's vision slowly worsened during this period, and that she continued to suffer from advanced or severe glaucoma.[3] (Id. at 347-83, 421-27)

---

[2] Plaintiff's assertion that she stopped working in August 2002 is inconsistent with her later statement that she was employed by the City of New York through May 2003. (Id. at 137-38) The inconsistency is not material, however, because the operative date for purposes of her disability benefits application is the date she reported becoming disabled, which is January 1, 2005. (Id. at 115)

[3] Although the Administrative Law Judge ("ALJ") twice requested a report from Dr. Al-Aswad, the administrative record does not contain any reports or notes from Dr. Al-Aswad after Plaintiff's surgery in 2008. (Id. at 396) Dr. Moazami's notes indicate, however, that Plaintiff continued to see Dr. Al-Aswad through at least 2017. (Id. at 383)

Several consultative examinations of Plaintiff in 2015 and 2017 confirmed that she suffers from glaucoma. In a November 2015 examination, Dr. Stephen Doro, an ophthalmologist, found that Plaintiff's uncorrected visual acuity is 20/100 in her right eye and 20/60 in her left eye, with "visual field defects and constriction." (Id. at 343) Dr. Doro concluded that she suffered from "incipient cataracts" and "severe glaucoma."[4] Id. Two consultative examinations in October 2017 found that Plaintiff suffers from "glaucoma" and "advanced glaucoma." (Id. at 384-88 (Oct. 25, 2017 consultative examination conducted by Dr. Silvia Aguiar showing that Plaintiff's uncorrected vision is 20/70 in her right eye and 20/40 in her left eye, with "extremely impaired peripheral vision"; diagnosis of "glaucoma"), 397-400 (Oct. 30, 2017 New York State disability examination conducted by Dr. Erica Stubbs diagnosing Plaintiff with "advanced glaucoma," dry eye syndrome, vitreous eye floaters, and nuclear sclerosis in both eyes))

In a medical source statement form, Dr. Aguiar found that Plaintiff's glaucoma limited her ability to (1) drive or travel more than short distances; (2) avoid ordinary workplace hazards – such as boxes on the floor or doors left ajar; (2) detect approaching people and vehicles; (4) read and handle documents; and (5) distinguish small objects.[5] (Id. at 390-93) The form states that Plaintiff should avoid, inter alia, unprotected heights, moving mechanical parts, and the operation of motor vehicles. (Id. at 393)

---

[4] Although Dr. Doro's report states that Plaintiff is registered as legally blind in New York State, the report does not suggest that he made an independent determination as to whether Plaintiff's visual impairments meet the legal test for blindness under New York law or the Social Security Act. (Id.)

[5] Judge Netburn's R&R states in error that Dr. Aguiar found that Plaintiff could "determine differences in shape and color of small objects." (R&R at 6; AR (Dkt. No. 10) at 392 (in response to a question on the medical source statement form asking whether "the individual [is] able to determine differences in shape and color of small objects such as screws, nuts or bolts[,]" Dr. Aguiar checked "No")

Dr. Mark Farber and Dr. Hema Sugumaran reviewed Plaintiff's medical records and offered medical opinions concerning Plaintiff's visual limitations, including whether those limitations meet the standard for blindness set forth in the Social Security Act ("SSA") and associated regulations.  See 42 U.S.C. § 416(i)(1) (providing that "blindness" means "central visual acuity of 20/200 or less in the better eye with use of a correcting lens" or a "limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees"); see also 20 C.F.R. pt. 404(P) app. 1 §§ 2.02, 2.03.A (Listing of Impairments) (articulating same definition of blindness).

Dr. Farber, a board-certified internist, testified that Plaintiff's uncorrected vision is 20/100 in her right eye and 20/60 in her left eye.  (AR (Dkt. No. 10) at 45-51, 401-20)  With respect to Plaintiff's fields of vision, Dr. Farber testified that there was "no documentation that it's less than 20 percent."  (Id. at 46)  Dr. Farber concludes that Plaintiff's visual impairments are not severe enough to meet the statutory standard of blindness.  (Id. at 46-48)

Dr. Sugumaran, a board-certified ophthalmologist who is "familiar with the Social Security disability regulations," reviewed Plaintiffs' medical records and answered medical interrogatories at the ALJ's request.  (Id. at 12, 428-41)  Dr. Sugumaran concludes that Plaintiff suffers from glaucoma, vitreous floaters, dry eye syndrome, and cataracts.  (Id. at 439)  Citing Plaintiff's most recent visual assessment – from October 2017 – Dr. Sugumaran finds that Plaintiff is not blind within the meaning of the SSA regulations, because her visual acuity is 20/80 in her right eye and 20/30 in her left eye,[6] and her visual fields are "greater than 20 degrees in each eye."  (Id. at 440)

---

[6]  The October 30, 2017 medical report on which Dr. Sugumaran relied does not specify whether the evaluation of Plaintiff's visual acuity is premised on corrected or uncorrected vision.  (See

4

## II.     PROCEDURAL HISTORY

The Complaint was filed on July 31, 2019. (Cmplt. (Dkt. No. 2)) On August 7, 2019, this Court referred this case to Judge Netburn. (See Order of Reference (Dkt. No. 6))

On January 8, 2020, the Commissioner moved for judgment on the pleadings. (Mot. (Dkt. No. 12)) Per this Court's August 7, 2019 scheduling order, Plaintiff's opposition brief was due on March 7, 2020 – 60 days after the Commissioner's motion was filed. (Dkt. No. 7)

In March 12, 2020 and April 13, 2020 orders, Judge Netburn noted that Plaintiff had not filed an opposition brief, and directing Plaintiff to file her opposition brief or to request an extension of time. (Dkt. Nos. 14, 15) In a May 5, 2020 order, Judge Netburn notes that the April 28, 2020 deadline to request an extension of time has passed, and that the Commissioner's motion will be deemed unopposed. (Dkt. No. 16)

On September 8, 2020, Judge Netburn issued a 20-page R&R recommending that the Commissioner's motion be granted and that this action be dismissed. (R&R (Dkt. No. 17)) In her R&R, Judge Netburn notifies the parties that they have fourteen days from service of the R&R to file objections, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. (Id. at 19-20)[7] Judge Netburn also gives notice that a "[f]ailure to file timely objections will result in a waiver of those objections for purposes of appeal." (Id. at 20 (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985))

---

AR (Dkt. No. 10) at 397-400, 440) In either event, Plaintiff does not meet the SSA's standard for blindness.

[7] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

5

Plaintiff submitted a letter on October 21, 2020, which reads in pertinent part as follows:

> I am writing to request that medical factual information regarding my case be considered as an important part [of] any decision made.  Because of how glaucoma progresses, I have to request that the records confirm that 2005 or 2006 be changed as the onset dates of my legal blindness.  All my medical records from my doctors will show that by the time I was being seen as their patient, my condition had already deteriorated to visual loss at the level of legal blindness.

(Pltf. Obj. (Dkt. No. 20))

This Court will treat Plaintiff's October 21, 2020 letter as an objection to the R&R.  (Id.)

## DISCUSSION

### I.      LEGAL STANDARDS

#### A.      Review of a Report and Recommendation

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), a party may submit objections to the magistrate judge's R&R.  Any objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1).  "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'"  Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)).  A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction

that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where a timely objection has been made to a magistrate judge's recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting Vega v. Artuz, 97CIV.3775LTSJCF, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)) (second alteration in Phillips). "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error." IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865(LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343(WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are 'merely perfunctory responses,' . . . 'rehashing . . . the same arguments set forth in the original petition.'") (citing Vega, 2002 WL 31174466, at *1; Greene v. WCI Holdings, 956 F. Supp. 509, 513 (S.D.N.Y. 1997)).

Here, as discussed above, Plaintiff submitted a letter stating that her medical records indicate that she became legally blind as of 2005 or 2006. (Pltf. Obj. (Dkt. No. 20)) Accordingly, the portion of the R&R addressing this issue will be reviewed de novo. The remainder of the R&R will be reviewed for clear error. See Gilmore, 2011 WL 611826, at *1.

### III.     JUDGE NETBURN'S R&R

The Commissioner contends that the ALJ's "decision that plaintiff was not entitled to [disability benefits] is supported by substantial evidence and should be affirmed." (Def. Br. (Dkt. No. 13) at 15)

In her R&R, Judge Netburn correctly set forth the standards of review, noting that the ALJ's decision "may be set aside only if it is 'based upon legal error or is not supported by substantial evidence.'" (R&R (Dkt. No. 17) at 9 (quoting Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999))) Judge Netburn also acknowledges the relevant disability definitions, both for statutory blindness (id. at 11 (citing 42 U.S.C. § 416(i)(1))), and for other disabilities. (Id. at 10 (citing 42 U.S.C. § 423(d))) Judge Netburn correctly notes that "[t]o be eligible for [disability benefits], an individual must have had at least twenty quarters of coverage in the forty quarters preceding the onset of disability," but that "a person who is blind . . . need not satisfy the '20/40' rule." (Id. at 11-12 (citing 42 U.S.C. § 423(c)(1)(B)(iii); 20 C.F.R. § 404.130))

Judge Netburn then describes the basis for the ALJ's 2018 decision denying Plaintiff's request for disability benefits:

> The ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 1995. . . . She did not dispute the accuracy of her Social Security earning record, which showed covered earnings in the years 1971-1977, 1979-1990, 2002, and 2014. R. 11. The ALJ concluded that Plaintiff last met "20/40" requirement on December 31, 1995. Id. If she was not blind, she did not meet the insured status requirement for [disability benefits]. Id. . . . After considering the medical evidence, the ALJ concluded that Plaintiff was not statutorily blind, despite significant impairments affecting her vision, including glaucoma, floaters, and dry eye syndrome. Id. Accordingly, he found that she last met the disability insured status requirement on December 31, 1995. Id. The ALJ concluded that Plaintiff was not disabled at any time that she met the insured status requirements of Title II of the Act and was accordingly not eligible for [disability benefits].

(Id. at 13 (citing AR (Dkt. No. 10) at 11))

8

Applying the relevant legal standards, Judge Netburn then concludes that "the ALJ properly determined that, assuming she is not statutorily blind, Plaintiff is not entitled to [disability benefits]," because "Plaintiff last met the Act's non-statutory blindness insured status requirement on December 31, 1995."  (Id. at 14)  Judge Netburn goes on to conclude that the "ALJ's finding that Plaintiff did not establish entitlement to [disability benefits] based on statutory blindness was supported by substantial evidence."  (Id. at 15)

Judge Netburn also finds that "the ALJ discharged his duty to develop the record."  (Id. at 18)  Judge Netburn notes that while "the record did not include notes post-2008 from Plaintiff's ophthalmologic surgeon, Dr. Al-Aswad," "the New York State Office of Temporary and Disability Assistance had made two requests for documents . . . on the SSA's behalf," and accordingly "the ALJ was not obligated to make additional requests for documents from Dr. Al-Aswad before issuing his determination."  (Id. at 17-18 (citing Perez v. Chater, 77 F.3d 41, 47-48 (2d Cir. 1996)))  Judge Netburn also points out that the ALJ "made 'every reasonable effort' to obtain an additional report" from Plaintiff's ophthalmologist, Dr. Moazami, noting that the ALJ "gave Plaintiff a form to bring" to Dr. Moazami and "wrote a letter to Dr. Moazami in March 2018."  (Id. at 18 (citing Cruz v. Sullivan, 912 F.2d 8, 12 (2d Cir. 1990)))

## IV.  PLAINTIFF'S OBJECTION

As discussed above, in her October 21, 2020 letter, Plaintiff contends that her "legal blindness" began in "2005 or 2006."  (Pltf. Obj. (Dkt. No. 20))  According to Plaintiff, "[a]ll [of her] medical records from [her] doctors will show that by the time [she] was being seen as their patient, [her] condition had already deteriorated to visual loss at the level of legal blindness."  (Id.)

9

As an initial matter, Plaintiff's objection is vague. It is not clear what standard for "legal blindness" she is referencing, nor does she specify the medical records that allegedly support her claim.

In any event, Plaintiff's objection fails, because there is no evidence that Plaintiff's vision impairment meets the SSA's definition of blindness.[8] None of Plaintiffs' physicians has found that Plaintiff meets the SSA's test for blindness (see AR (Dkt. No. 10) at 12) ("Neither Dr. Doro, Dr. Stubbs, nor Dr. Moazami indicated in their reports that the claimant's visual impairment meets the Social Security requirement of blindness."), and the two experts who offered medical opinions – Dr. Farber and Dr. Suguraman – concluded, based on Plaintiff's medical records, that her visual impairments did not meet either of the criteria for blindness set out in the SSA and its regulations. (Id. at 46-48, 440) Although Dr. Farber incorrectly described Plaintiff's field of vision in terms of "percent" rather than the statutorily-appropriate metric of "degree," Dr. Sugumaran, an ophthalmologist, independently concluded that Plaintiff was not statutorily blind using the correct measurement of degree.[9] Id.

This Court has reviewed the remainder of Judge Netburn's R&R and finds it to be well-reasoned and free of clear error. See Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) (citations omitted). Accordingly, Judge Netburn's R&R is adopted in its entirety, and the Commissioner's motion for judgment on the pleadings will be granted.

---

[8] As noted above, although Dr. Doro's report concerning his November 16, 2015 consultative examination states that Plaintiff is "registered in New York State as legally blind," Dr. Doro did not make any independent determination that Plaintiff meets the standard for blindness in New York or under the SSA. (See AR (Dkt. No. 10) at 343)

[9] To the extent that Plaintiff's letter could be read to suggest that not all of the relevant medical records were before the ALJ, this Court agrees with Judge Netburn that the ALJ took all appropriate steps necessary to develop the record. (R&R (Dkt. No. 17) at 17-18)

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings is granted. The Clerk of Court is directed to terminate the motion (Dkt. No. 12) and to close this case.

Copies mailed by Chambers.

Dated: New York, New York
       November 27, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge